**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 23 2024

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

(To be supplied by the court)

_____ RYAN KANNETT _____, Plaintiff

v.

_____ UNITED STATES OF AMERICA _____,

**Jury Trial requested:**
(please check one)
____ Yes __X__ No

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

### PRISONER COMPLAINT

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

RYAN KANNETT, Prisoner No. 70597-004
FCI ENGLEWOOD, 9595 W. Quincy Ave., Littleton, CO 80123
(Name, prisoner identification number, and complete mailing address)

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

_____    Pretrial detainee
_____    Civilly committed detainee
_____    Immigration detainee
XX      Convicted and sentenced state prisoner
_____    Convicted and sentenced federal prisoner
_____    Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:      UNITED STATES OF AMERICA
                  (Name, job title, and complete mailing address)
                  (U.S. Attorney General) Room 5111, Main Justice
                  Bldg., 10th and Constitution N.W., Washington, DC 20530

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

The United States of America and its agents always

act under color of federal law.

Defendant 1 is being sued in his/her _X_ individual and/or ___ official capacity.

2

Defendant 2: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C.   JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

____   State/Local Official (42 U.S.C. § 1983)

____   Federal Official
As to the federal official, are you seeking:
___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

__XX__   Other: (*please identify*) __FEDERAL TORT CLAIMS ACT, 28 U.S.C. §§__
__1346(b), 2671-80__

## D.     STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  ASSAULT (under Colorado law)

Claim one is asserted against these Defendant(s): UNITED STATES OF AMERICA

Supporting facts:

1. On 10/6/2023 at approximately 5:50 PM on the center range of Lower East Unit of FCI Englewood, I was walking out of my cell cubicle and down the hallway to another cell across the hall from me. I am a federal inmate incarcerated at FCI Englewood and, at the time of the incident described herein, I was housed in the Lower East Unit of the prison.

2. When I arrived at the cubicle down the hall from my own cubicle, I sat down in a chair and began conversing with the inmates who lived in that cubicle. About a minute or so after I arrived in this cubicle, I was approached by Officer MOSLEY, a federal Bureau of Prisons correctional officer working at FCI Englewood.

3. Officer Mosley ("MOSLEY") asked me why I looked at him as he entered the range from the back door. I explained to MOSLEY that I did not know what he was talking about. I told him that I'd just left my cell to come to speak to the inmates in the area in which I was sitting.

4. Without saying anything else or giving me any command to do anything, MOSLEY grabbed me by the arm and snatched me out of the chair I was sitting in. He instructed me to put my hands on the wall and spread my legs. I complied with his order although he'd hurt my arm when he pulled me up from the chair without warning.

5. MOSLEY searched my body and my clothing without finding any contraband. MOSELY had been harassing me at every opportunity

4

D. **STATEMENT OF CLAIMS**

in the past and I was tired of being harassed and assaulted by MOSLEY. I stated to him after he completed his "search" which yielded nothing, "You know at some point this constitutes harassment, right?". I had already informed Associate Warden Jones about MOSLEY harassing and assaulting me in the past. I'd informed several of the BOP staff working in the Psychology Dept. and told my lawyer about the multiple incidents of assault and battery I'd suffered at the hands of MOSLEY in the past.

6. Associate Warden Jones told me that he would "look into it" but never informed me of the results of his inquiry. MOSLEY was permitted to continually harass and assault me with impunity.

7. In response to my statement about his harassing me, MOSLEY said to me, "Okay, ask me if I gave a F***." MOSLEY then grabbed me and shoved me towards the door near the end of the hall. He instructed me to walk to the end of the hall. I obeyed without saying anything to MOSLEY at first. After a few paces, I asked MOSLEY why I was told to walk to the end of the hall. He told me to shut up.

8. When I arrived at the end of the hallway I turned my head toward MOSLEY and asked him where we were going as there was nowhere else to go. He told me to turn back around in language laced with expletives before grabbing me violently, lifting me in the air from behind, and slamming me down on the concrete. I was in a severe amount of pain due to this assault and battery and I was really scared as MOSELY is much bigger than I am. I was also well aware of MOSLEY's reputation of beating up inmates he didn't like.

9. I injured my head, face and knee on the concrete floor when he slammed me to the ground. I also hyperextened one of my fingers which twisted under my body when I was slammed on the ground. I momentarily felt a flash of white light when my head bounced off the concrete floor and I felt intense pain in my head and face. MOSELY fractured my elbow during his battery of my person.

10. At some point while MOSELY was on top of me on the floor and threatening to break my wrists--he began pulling both of my wrists high behind my back which caused me further pain--the Operations Lieutenant came running down the hall yelling at me to place my hands behind my back. I complied.

11. MOSELY pulled my hands and wrists so high behind my back that I thought he'd break my wrists. He said to me, "I'm going to break your wrists." I was fully complying with everything he and the Operations Lieutenant instructed me to do so I was surprised that MOSELY would attempt to further assault me with the Operations Lieutenant right there watching everything.

## D. <u>STATEMENT OF CLAIMS</u>

12. MOSELY and the other officer escorted me out of the housing unit. I was ultimately placed in segregation because MOSELY prepared a false incident report which stated that I was threatening him and had assaulted him without causing any bodily harm.

13. MOSELY has been suspended by the Bureau of Prisons since the time of this incident for assaulting inmates after he put Inmate Marcus Spencer Fry's [Inmate 18635-030] head through a second story glass window causing several lacerations to his face and additional injuries.

**CLAIM TWO:** Battery

Claim Two is asserted against these Defendants: United States of America

Supporting Facts:

The facts alleged and articulated in the above paragraphs (1-11) are realleged and incorporated here as facts supporting the tort of battery under Colorado law.

**CLAIM THREE:** Intentional Infliction of Emotional Distress

Claim Three is asserted against these Defendants: United States of America

Supporting Facts:

The facts alleged and articulated in the above paragraphs (1-11) are realleged and incorporated here as facts supporting the tort of intentional infliction of emotional distress under Colorado law. Additional facts:

14. MOSELY prepared a false incident report concerning his interaction with me described above. As a result of MOSELY's incident report, I was placed in the segregated housing unit and, after a hearing with a DHO officer, sanctioned with a loss of good time credits which caused me to have to serve additional time in prison. MOSELY claimed in his incident report that I assaulted him knowing that to be false and would subject me to the loss of good time credits and additional time in the "hole" (segregated housing unit).

## D. STATEMENT OF CLAIMS

15. MOSELY engaged in extreme and outrageous conduct intentionally and recklessly and his conduct caused Plaintiff severe emotional distress.

16. As a result of MOSELY's actions described herein, Plaintiff suffered from nightmares, fear, anxiety, and depression. Plaintiff was treated with medications while in BOP custody at FCI Englewood. Plaintiff suffered from PTSD as a result of the assault and battery of his person by MOSELY.

17. Plaintiff was placed under the care of Dr. Whitaker at FCI Englewood to treat him for his psychological issues indicated above (paragraphs 15 and 16). Dr. Whitaker is a psychologist who works for the Bureau of Prisons at FCI Englewood. Plaintiff has been under the care of Dr. Whitaker for treatment of his severe emotional distress since December 2023. Plaintiff is still being treated for the emotional injuries he suffered as a result of MOSELY's assault and battery and the outrageous conduct described herein.

## EXHIBITS

18. On 11/6/2023, I submitted an FTCA (tort) claim to the Regional Office of the Bureau of Prisons located at 400 State Avenue, Kansas City, Kansas 66101-2492. Exhibit A is a copy of the FTCA tort claim (Standard Form 95) that I sent to the Regional Director of the Bureau of Prisons on 11/6/2023. As six months have passed since I sent this FTCA tort claim to the Regional Director, I have exhausted my administrative remedies under the FTCA for the common law torts alleged herein.

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes _XX_ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):    _____

Docket number and court:    _____

Claims raised:    _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)    _____

Reasons for dismissal, if dismissed:    _____

Result on appeal, if appealed:    _____

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

_X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

_X_ Yes ___ No (*check one*)

*I filed a FTCA tort claim. (See attached)

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendant including:

(1)    Declaring Defendant United States of America's conduct to be in violation of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.;

(2)    Awarding compensatory damages against all Defendants in an amount to be proven at trial;

(3)    Awarding actual damages against Defendant United States of America, the exact amount of which to be determined at trial;

(4)    Award Plaintiff reasonable costs;

(5)    Granting such other relief as the Court may deem just and proper.

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

July 16, 2024
_____
(Date)

(Revised November 2022)

6

**EXHIBIT A**

FTCA tort claim submitted to the Regional Director on 11/6/2023
with exhibits (declarations in support)

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.)  (Number, Street, City, State and Zip Code) |
|---|---|
| Director<br>North Central Regional Office<br>400 State Ave.<br>Kansas City, KS 66101-2492 | Ryan Kannett #70597-004<br>FCI Englewood<br>9595 W. Quincy Ave.<br>Littleton, CO 80123 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY xx CIVILIAN | 4. DATE OF BIRTH<br>6/11/83 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>10/6/2023 | 7. TIME (A.M. OR P.M.)<br>5:50 PM |
|---|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

I was assaulted by Officer J. MOSELY at FCI Englewood where I am incarcerated.

See my attached sworn declaration concerning the events that occurred, my assault, and the facts regarding my claim.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

I received a severe head injury, a right knee injury, a back injury, injuries to both elbows, and my left "pinkie" finger was damaged.
I have emotional injuries including anxiety, depression, PTSD & fear.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Ronald R. Horner<br><br>Bradley Roenfelt | **See attached sworn declarations** |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|  | $1,000,000.00 |  | $1,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of person signing form | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* |  | 11/6/23 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109

NSN 7540-00-634-4046

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  □ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☒ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    □ Yes    ☒ No    | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  □ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95    BACK

DECLARATION OF RYAN KANNETT

Ryan Kannett states:

1. I submit this declaration to describe the events that occurred on 10/06/2023 in the Lower East Unit of FCI Englewood on the center range. Specifically, I was assaulted by Officer J. MOSELY ("MOSELY").

2. On 10/06/2023 at approximately 5:50pm, I was walking out of my cell cubicle and down the hallway to another cell across the hall from me. When I arrived there, I sat down in a chair and began to speak with the people who lived there.

3. A minute or so later, I was approached by MOSELY who stated that when he entered the range through the back door, I had looked at him as I was walking into my cell. MOSELY asked why I turned around and walked out of my cell and down the hall to the other cell. I responded that I didn't know what he meant and that I hadn't been entering my cell, but exiting it to come speak to the people in the cell I was currently sitting in.

4. Without saying anything or giving me an order, MOSELY grabbed me by the arm and forceably pulled me out of the chair. MOSELY told me to put my hands on the wall and spread my legs, which I complied with.

5. MOSELY proceeded to pat search me. Once that was over and having found nothing, MOSELY told me to take off my jacket, scarf, beanie cap, and shoes. I again complied with this and did so as soon as he ordered me to.

6. When MOSELY completed his search of my belongings, he found absolutely no contraband of any kind on my person or in my articles of clothing. I stated to MOSELY in an even and normal tone of voice, "You know at some point this constitutes harassment, right?" I stated this to MOSELY because he has harassed me constantly and continually, in an exceedingly aggressive, violent, and threatening manner from the very first day I arrived on this compound. A fact that had become so obviously deliberate and terrifying to me that a couple of months prior to this incident, I had spoken with A.W. Jones, the

Psychology Department, and my lawyer. I informed all of these parties of MOSELY's actions towards me for my own protection and ongoing safety.

7. Upon me saying this to MOSELY, he responded by saying to me in an aggressive manner, "Okay, ASK me if I give a fuck." MOSELY then grabbed me and while shoving me forward told me to walk to the end of the hall, which I did while he walked menacingly behind me. I asked MOSELY why I was walking to the end of the hall, to which MOSELY told me to, "Shut up."

8. When I got to the end of the hallway, I turned my head and upper torso towards MOSELY. While still facing the door with the rest of my body, I asked, "Where are we going?" MOSELY told me to, "turn the fuck back around" which I began to do while saying, "I was only asking where we're going." MOSELY then grabbed me and violently began to lift me up in the air to body slam me to the ground.

9. As I was now scared and worried about being physically injured, and as I was being assaulted by MOSELY, I instinctively grabbed a hold of the door handle to try and stay upright and avoid being seriously injured as MOSELY continued to assault me.

10. After a couple of moments, MOSELY overpowered me, lifted me up and did indeed body slam me to the concrete floor, visciously cracking my head, face, and knee against the concrete and bending my left pinky finger under my body painfully. I momentarily saw a flash of white light and felt excruciating pain.

11. At this point, the operations Lieutenant who had been all the way down at the other side of the hallway when I was body slammed came sprinting up and yelling at me to put my hands behind my back, which I immediately complied with. This Lieutenant later agreed that I had complied when I was in the lieutenants office with him.

12. As I put my hands behind my back to be cuffed, and while not struggling or resisting in any way, MOSELY violently wrenched both of my arms up to my neck, nearly breaking them and threatened me by whispering harshly in my ear, "I'm gonna break your wrists." This shocked and scared me as I was not resisting in any way.

13. The entire incident had been so overwhelming and terrifying to me that I realized MOSELY felt that he could do anything he wanted to and get away with it, without question or concern. Further, I would be the one to pay the consequences, irrespective of whether I had done anything wrong to incur such consequences. As such, after getting over my initial shock, I replied calmly, "fine, go ahead and break them then."

14. To his credit, at this point MOSELY simply cuffed my wrists, albeit roughly, and did not follow through with his threat. At this point, the lieutenant told me to get to my knees and assisted me in standing up.

15. At no time during my interactions with MOSELY did I threaten to do him or anyone else bodily harm. Nor did I in anyway or manner assault MOSELY, with or without serious bodily harm. Conversely, MOSELY did in fact threaten to do me bodily harm, and did assault me for no legitimate or professionally plausible reason. This assault did do me actual and significant serious bodily harm.

16. At no time during my interactions with MOSELY was my conduct disruptive in any way or manner. I readily complied with all of MOSELY's direct orders and remained calm throughout my interactions with MOSELY. The only caveat being my instinctively grabbing hold of the door handle in a genuine state of hear for my physical safety and well being after MOSELY had already begun to violently assault me.

17. Lastly, I have been in the B.O.P. system since 2004. I do not have a single write-up or incident report throughout that time to date for insolence, disrespecting an officer, disobeying a direct order, disruptive conduct of any kind, making threats of bodily harm, or for threatening or actually committing an assault against anyone.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct and executed this 8th day of November 2023 at Littleton, Colorado.

Ryan Kannett#70597-004
FCI Englewood
9595 W. Quincy Ave.
Littleton, Colorado 80123

## DECLARATION OF RONALD RAY HORNER

Ronald Ray Horner states:

1. I am a prisoner at FCI Englewood in Littleton, Colorado. I submit this sworn declaration to articulate what I saw occur on 10/6/2023 at about 6:15 PM.

2. On 10/6/23 at around 6:15 PM on the center range of the Lower East Unit of FCI Englewood, I witnessed Officer Mosley ("MOSLEY") assault Inmate Ryan Kennett ("KENNETT").

3. MOSLEY was escorting KENNETT down the center range of the Lower East Unit at about 6:15 PM and had KENNETT's arm twisted behind his back. When KENNETT reached the door, which was locked, KENNETT put up his left arm. I think this was done in an effort to keep from being rammed into the door. At this point, MOSLEY angrily slammed KENNETT into the north wall and then body slammed him on the floor.

4. MOSLEY screamed to KENNETT, "I'll break your fuc**** arm." From my vantage point, it did not appear that KENNETT was resisting MOSLEY at any time during the events described above.

5. Three officers were present during this assault: MOSLEY, the unit officer, and the shift lieutenant. I should note that MOSLEY did not attack KENNETT until KENNETT was clear of the camera above the emergency exit door. I don't think that this was not planned. I believe MOSLEY waited until he was outside of the view of the camera to commit this vicious assault on KENNETT.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct and executed this 15th day of October 2023 at Littleton, Colorado.

Ronald R. Horner #16352-046
FCI Englewood
9595 W. Quincy Ave.
Littleton, Colorado 80123

## DECLARATION OF BRADLEY ROENFELT

Bradley Roenfelt states:

1. I am a federal prisoner incarcerated at FCI Englewood in Littleton, Colorado. I submit this sworn declaration to describe the events that occurred on October 6, 2023 between Officer Mosley ("MOSLEY") and Inmate Ryan Kennett.

2. On Friday, October 6, 2023 at approximately 6:00 PM, MOSLEY entered the center range of the Lower East Unit via the emergency exit door. I saw him interacting with Inmate Kennett who was across the hall from his sleeping quarters. Inmate Kennett was instructed to remove his shoes and was being searched by MOSLEY. MOSLEY removed the shoe inserts and dropped all of Kennett's property on the floor.

3. Shortly after MOSLEY's arrival on the tier an unknown lieutenant also entered the center range through the emergency exit door.

4. After MOSLEY completed his search of Inmate Kennett, Kennett was sent down the hall, uncuffed and in his stockinged feet. MOSLEY followed behind him. When Inmate Kennett reached the center range emergency exit with MOSLEY behind him, Inmate Kennett pushed the door as if to open it, however, the door was secured. MOSLEY told Inmate Kennett to let go of the door handle. When Inmate Kennett did not immediately release the door handle, MOSLEY shoved Inmate Kennett against the wall then put him in a choke hold from behind. Next, MOSLEY slammed Inmate Kennett on the ground with such force that my desk was pushed into my room--my bunk and dorm area are next to the emergency exit.

5. I had a clear view of everything that happened between MOSLEY and Inmate Kenneth due to the proximity of my bunk to the emergency exit. Inmate Kenneth was not resisting MOSLEY nor had he done anything at all

-1-

to provoke MOSLEY to assault him the way that he did.

6. After MOSLEY body slammed Inmate Kennett to the ground, the aforementioned lieutenant walked up, ordered the other prisoners to leave and instructed Inmate Kennett to put his hands behind his back. MOSLEY was lying on Inmate Kennett's back at this time, twisting his arm and preventing Inmate Kennett from complying. Although the lieutenant directed us to leave, we were unable to immediately exit due to the fact that the lieutenant was standing in the path of our egress. The unit officer arrived at this time and calmly ordered us to leave. The lieutenant stepped aside so we could leave.

7. As I exited, I heard MOSLEY twice tell Inmate Kennett, "I'll break your fuc**** arm." By the time I reached the end of the hall and looked back, MOSLEY, the lieutenant, and Inmate Kennett had exited the range.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct and executed this 16th day of October 2023 at Littleton, Colorado.


Bradley Roenfelt
Prisoner #31563
Federal Correctional Institution [Englewood]
9595 W. Quincy Ave.
Littleton, Colorado 80123

-2-